UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARTIN ROMERO, | No. ED CV 13-0853-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 17, 2013, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 7, 2013, and June 8, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 6, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 12, 1963. [Administrative Record ("AR") at 62-63.] He has a twelfth grade education and past relevant work experience as a general laborer. [AR at 30-33, 119-20, 123, 126-27.]

On May 4, 2009, plaintiff protectively filed an application for Disability Insurance Benefits, alleging that he has been unable to work since February 28, 2008, as a result of a back injury. [AR at 11, 107-08, 115, 118-19.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 64-74.] A hearing was held on July 28, 2011, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 11, 25-61.] A vocational expert ("VE") and plaintiff's mother, Georgia Hunt, also testified. [AR at 47-60.] On August 24, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability from February 28, 2008, through the date of the decision. [AR at 21.] Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on March 25, 2013. [AR at 1-3, 5.] When the Appeals Council denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1 sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled
2 and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform
3 past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
4 case of disability is established. The Commissioner then bears the burden of establishing that
5 the claimant is not disabled, because he can perform other substantial gainful work available in
6 the national economy. The determination of this issue comprises the fifth and final step in the
7 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
8 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, February 28, 2008.[1] [AR at 13.] At step two, the ALJ concluded that plaintiff has the severe impairments of status post lumbar laminectomy, right extremity radiculopathy, lumbar discogenic disease, borderline peripheral neuropathy, learning disorder and obesity. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a range of light work as defined in 20 C.F.R. § 404.1567(b).[3] [AR at 14-15.] Specifically, the ALJ determined:

---

[1]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. [AR at 13.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

> [plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently; [plaintiff] can stand and/or walk four hours out of an eight-hour day but no more than 45 minutes at a time; [plaintiff] can use a cane as necessary for ambulation; [plaintiff] can sit for eight hours out of an eight-hour workday with normal breaks such as every two hours; [plaintiff] can climb stairs but not ladders; [plaintiff] cannot balance or work at heights; [plaintiff] can occasionally stoop, crouch, crawl and bend; [plaintiff] can only occasionally use foot controls with the right lower extremity and [plaintiff] is limited to simple repetitive tasks that do not require reading above the 6th grade level and math above the 2nd grade level.

[Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 19.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an electronics worker, packing machine operator, and assembler of buttons and notions. [AR at 19-20.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from February 28, 2008, through the date of the decision. [AR at 21.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) erred in his step five determination by failing to properly resolve inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); (2) improperly evaluated plaintiff's subjective complaints; and (3) improperly rejected plaintiff's mother's testimony. [Joint Stipulation ("JS") at 3-7, 10-16, 21-23.] As explained below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

**A.    DOT DEVIATION**

Plaintiff contends that the ALJ's finding that he is limited to "standing and walking only 4 hours out of an 8 hour work day, no more than 45 minutes at a time" [see AR at 15], conflicts with the demands of two of the three occupations identified by the VE and relied upon by the ALJ to support her step five determination. [JS at 4-6.] In particular, plaintiff maintains that both "electronics worker" and "packing machine operator" are described as "light" occupations in the

DOT that "would require . . . standing and walking up to 6 hours out of 8." [Id.] Plaintiff also argues that the ALJ "failed to address the impact of [plaintiff]'s need to use a cane and how it [a]ffects the ability to perform these occupations when the use of a cane is not specifically addressed in the [DOT]." [JS at 6-7.]

"[T]he best source for how a job is generally performed is usually the [DOT]." Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The DOT raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435. An ALJ may rely on VE testimony that varies from the DOT description of how a job is performed "only insofar as the record contains persuasive evidence to support the deviation." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citing Johnson, 60 F.3d at 1435). Moreover, "when a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Social Security Ruling ("SSR") 00-4p,[4] 2000 WL 1898704, *4. SSR 00-4p further provides that "[i]f the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id. Nevertheless, the ALJ's failure to ask the VE about potential conflicts and obtain a reasonable explanation for any conflicts is harmless error where there is no actual conflict or where the VE has "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi v. Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007).

At the administrative hearing, the following exchange took place between the ALJ, plaintiff's counsel and the VE:

> [ALJ]:   Assume we have a hypothetical person who is 44 years old; has a 12th grade special education; is literate; speaks English; and can perform the demands of work within the following RFC: He can lift and/or carry 10

---

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

|   |   |   |
|---|---|---|
| | | pounds frequently, 20 pounds occasionally. He can stand or walk -- and/or walk four hours out of an eight-hour day with no more than 45 minutes at a time; and the use of [a] cane is necessary for ambulation. He can sit eight hours out of [an] eight-hour day with normal breaks, such as every two hours. He can climb stairs but he cannot climb ladders, work at heights, or balance. He can occasionally stoop, crouch, crawl, and bend. He can occasionally use foot controls with the right lower extremity. He's limited to simple, repetitive tasks with no reading required above the 6th grade reading level and no math above the 2nd grade level. Could this person do [plaintiff]'s past relevant work? |
| [VE]: | No, your Honor. |

****

| [ALJ]: | Would there be other work this person could perform? |
|---|---|
| [VE]: | Yes. Examples would be that of an electronic worker. The DOT is 726.687-010. It's unskilled and light work. Within the region of Los Angeles, Orange, Riverside, and San Bernardino counties, there are approximately 4,000 such positions. And in the national economy, approximately 79,000 such positions.<br>Another position would be that of a packing machine operator. 920.685-082. It's unskilled and light. Approximately 10,000 positions within the region. And nationally, approximately 165,000 such positions.<br>Another position would be that of an assembler of buttons and notions. And the DOT is 734.687-018. It's unskilled, and it's actually sedentary exertionally, with approximately 4,000 positions in the region and 75,000 positions in the national economy. |

****

| [Counsel]: | If the [hypothetical] individual . . . were going to not be able to -- well, if they would require a sit/stand option every 30 to 45 minutes, would that allow the performance of any of those jobs? The longest they could sit, the longest they could stand was 30 to 45 minutes at a time. |
|---|---|
| [VE]: | I think the electronic worker would still fit because that work could be performed sitting or standing because that could be done at a bench or seated. |
| [Counsel]: | Okay. |
| [VE]: | The same would be true of the sedentary job. |
| [Counsel]: | The assembler? |
| [VE]: | Yeah, the assembler. Then the packing machine operator position, I think, would become problematic. I would have to erode numbers based on that |

|   |   |
|---|---|
|   | hypothetical, reduce the available work by 50 percent of what numbers I did outline. |

[AR at 56-59.]

The ALJ's step five determination is supported by substantial evidence. As an initial matter, although plaintiff contends that the ALJ "failed to address the impact of [plaintiff]'s need to use a cane and how it [a]ffects the ability to perform these occupations when the use of a cane is not specifically addressed in the [DOT]" [see JS at 6], plaintiff's RFC -- which plaintiff does not challenge -- does not mandate plaintiff's use of a cane for ambulation. [See AR at 15.] Rather, plaintiff's RFC indicates that plaintiff "can use a cane as necessary for ambulation." [Id.][5] Thus, the only requirement is that plaintiff could use a cane, if he desired one, while performing the job.

In any event, even if plaintiff's RFC required the use of a cane, the hypothetical posed to the VE included this limitation and the VE responded that a plaintiff who needed to use a cane could perform the three jobs relied upon by the ALJ to support his step five determination. [See AR at 19, 57.] While the DOT does not explicitly address the use of a cane, a VE was employed precisely for this reason: to provide expert testimony and fill in any such gaps, by "provid[ing] more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, *3; see Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."); Moore v. Apfel, 216 F.3d 864, 869-70 (9th Cir. 2000) (VE's testimony provided "substantial evidence supporting" ALJ's decision).

Next, plaintiff contends that his limitation to "standing and walking only 4 hours out of an 8 hour work day, no more than 45 minutes at a time," conflicts with the demands of two of the "light" jobs identified by the VE -- electronics worker and packing machine operator. [JS at 4-6.]

---

[5] See, e.g., AR at 263 (Agreed Medical Examiner's evaluation, dated May 5, 2009, indicating that plaintiff "is able to walk without assistance, but does utilize a cane for community ambulation, but not at all times"). See also AR at 292 (February 29, 2008, "Work Status Report," indicating treatment for a "lumbar region" sprain and an abrasion on plaintiff's right hip and leg, requiring, among other things, use of a cane for seven days), and AR at 293 (March 3, 2008, "Work Status Report," indicating that plaintiff, "improved, but slower than expected," no longer requires use of a cane).

8

Yet, even assuming there is a conflict between the DOT and the VE's testimony with respect to these two jobs, such error was harmless because plaintiff does not argue that his RFC precludes him from performing the remaining job of assembler of buttons and notions, classified as "sedentary," identified by the VE and relied upon by the ALJ. [See, generally, JS at 4-7; see AR at 20-21]; Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (explaining that an error is harmless "when it was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted); see also Koch v. Astrue, 2009 WL 1743680, at *18 (D. Or. June 15, 2009) ("Even if the ALJ erred in relying on the [VE]'s testimony that [plaintiff] could perform the duties of a mail clerk, such error was harmless because the ALJ's finding that [plaintiff] could perform work as a price marker adequately supports her adverse disability finding."); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

Finally, the ALJ's finding that plaintiff could perform the position of assembler of buttons and notions, with 4,000 such positions available regionally and 75,000 such positions nationally, is sufficient to support her step five determination that a significant number of jobs exists in the national economy that plaintiff can perform. [See AR at 20]; 20 C.F.R. §§ 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet[.]") & 416.966(b) (same); see, e.g., Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519 (9th Cir. Jan. 23, 2014) (upholding finding that 2,500 jobs in California and 25,000 jobs nationally constitutes a significant number of jobs); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (upholding the ALJ's finding that 1,300 jobs in Oregon constituted significant work); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (upholding finding that between 1,000 and 1,500 surveillance system monitor jobs in the local area is a significant number); Moncada, 60 F.3d at 524 (upholding finding that 2,300 jobs locally and 64,000 nationally were significant numbers, sufficient to satisfy step five); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (upholding finding that "2,466 jobs constitute a significant number"). Remand is not warranted on this claim.

**B. CREDIBILITY**

Plaintiff contends that the ALJ improperly rejected his subjective allegations. [JS at 4, 10-16.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas, 278 F.3d at 958-59; see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In an undated Adult Function Report, plaintiff indicated that he has no problem with personal care. [AR at 149.] He stated that he prepares sandwiches or microwave-able meals approximately twice a day, and that it may take him between one-half hour and two hours to do so, including the time it takes him to clean up. [AR at 150.] With regard to daily activities, he reported performing "[s]ome chores," including cleaning, vacuuming, cleaning his cat's litter box "at least every other day," laundry and some maintenance, noting that he "sometimes" needs help with maintenance because he does not climb ladders like he used to, and stating that he needs help or encouragement to "keep[] things

organized." [AR at 149-50.] Plaintiff reported "try[ing] to go out as often as [he] can," walking, driving, or riding as a passenger in a car, and indicated that he can go out on his own, without assistance. [AR at 151.] He reported shopping in grocery stores "every two weeks to once a month," and indicated that he is able to handle his own finances. [Id.] He stated that he "hang[s] out [with others] two to three times a week," and keeps in touch with other people on a daily basis through phone calls, text messaging, and the Internet. [AR at 152.] He also indicated that he attends a Bible study group at church on a regular basis on his own. [Id.] With regard to his physical abilities, plaintiff stated that he is able to walk for one hour before needing to rest for between 10 and 20 minutes, and that he has difficulty lifting, standing, walking, kneeling, climbing stairs, and completing tasks. [AR at 153.] He reported that the use of a cane was prescribed in February 2008, but that he tries to use it only when his back and right leg bother him. [AR at 154.]

In an "Exertion Questionnaire" completed on June 5, 2009, plaintiff reported that he is able to walk for "30-45 minutes," after which he feels "extreme tightness in [his] back" and pain in his right leg. [AR at 133.] He also indicated that he is able to carry up to "20-25" pounds for approximately "30-50" feet. [AR at 134.] He reported performing household chores, and indicated that he lives alone in "a small single wide" mobile home. [AR at 133-34.]

At the administrative hearing, plaintiff testified that he has no trouble driving, and does his own grocery shopping, cooking, and household chores. [AR at 31-35.] He also stated that he goes to church on Sundays and Fridays, but indicated that standing for long periods at church is difficult. [AR at 35-36.] Plaintiff further testified that he can stand for 45 minutes, but starts to feel pain after about 20 minutes, and that it takes him about an hour sitting down before he can stand up again. [AR at 36.] He explained that he uses a cane for stability, often wears a back brace, and suffers from occasional back spasms. [AR at 37-39.] He indicated that he chooses not to take any medications for pain out of fear of becoming addicted, although he admitted he has taken pain medications in the past and "did okay with those." [AR at 36-37, 41.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." [AR at 16.] The ALJ nevertheless found that plaintiff's subjective statements were "not credible to

the extent those statements are inconsistent with the [RFC] assessment herein." [Id.] Thus, at step two, as the record contains no evidence of malingering by plaintiff,[6] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines [plaintiff's] complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citation omitted).

The ALJ rejected plaintiff's subjective symptom testimony because she found that: (1) "despite his impairment, [plaintiff] has engaged in a somewhat normal level of daily activity and interaction[;]" (2) plaintiff exhibited an "apparent lack of discomfort during the hearing[;]" (3) "the record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms[;]" (4) plaintiff "does not take any medications for [his allegedly disabling] symptoms[;]" and (5) plaintiff's allegations regarding the severity of his symptoms "are greater than expected in light of the objective evidence of record." [AR at 16-17.]

The ALJ provided clear and convincing reasons for rejecting plaintiff's subjective allegations. First, the ALJ's finding that plaintiff's allegations were undermined by his "somewhat normal level of daily activity and interaction" [see AR at 16] is supported by substantial evidence. Specifically, the ALJ noted that plaintiff "admitted activities of daily living including personal care, cooking, shopping and social activities. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." [Id.] Indeed, plaintiff conceded that he was able to perform household chores including cleaning and vacuuming, and that he cleans his cat's litter box "at least every other day." [AR at 149-50.] He also reported that he is able to prepare simple meals for himself approximately twice each day, go out on his own walking or driving, handle his own finances, and do his own grocery shopping. [AR at 150-51.] Thus, the ALJ properly found that plaintiff's admitted daily activities were inconsistent with his allegations of disabling functional limitations. See Thomas, 278 F.3d at 958-59 (an ALJ may consider a claimant's daily activities

---

[6] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

in weighing the claimant's credibility); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (finding that a plaintiff's ability to take care of her personal needs, prepare easy meals, do light housework, and shop for groceries "may be seen as inconsistent with the presence of a condition which would preclude all work activity"); see also Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (explaining that an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").

Second, the ALJ properly considered, and gave "some slight weight," to her own observation that plaintiff exhibited an "apparent lack of discomfort during the hearing." [See AR at 16]; Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements" (citation omitted)); Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute for medical diagnosis."); SSR 96-7p, 1996 WL 374186, *5 (explaining that the ALJ may "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements").

Third, the ALJ also discounted plaintiff's credibility because plaintiff made "relatively infrequent trips to the doctor for the allegedly disabling symptoms." [AR at 17.] In particular, the ALJ found that "the evidence shows only a few doctor visits between 2010 and the present time." [Id.] This finding is supported by substantial evidence, as a review of the record during the relevant time period indicates that plaintiff's medical appointments were infrequent, and that several were actually assessments performed pursuant to plaintiff's application for disability benefits. [See AR at 247-68, 311, 315-17.] An ALJ may properly rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective symptom testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citation omitted); see Burch, 400 F.3d at 681 (explaining that an ALJ is "permitted to consider lack of treatment in [her] credibility determination"); Johnson, 60 F.3d at 1434 (an ALJ may properly discredit a claimant's testimony based on contradictions between that testimony and the relevant medical evidence); Fair v.

Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (an "unexplained, or inadequately explained[] failure to seek treatment" is sufficient to discredit allegations of disabling pain).

Plaintiff concedes that he sought infrequent medical treatment, but argues that it was due to "his lack of financial resources." [JS at 15.] He further argues that, because "the ALJ never questioned him regarding the reasons why he was not getting more medical treatment," the ALJ's reliance on plaintiff's infrequent treatment "to attack his credibility without obtaining any explanation whatsoever from [plaintiff] constitutes reversible error." [Id.] However, plaintiff fails to provide any support for his assertion that he lacks the resources to obtain adequate medical care or that this was the reason for his infrequent medical treatment. Additionally, the fact that plaintiff raises this explanation for the first time here and failed to provide this information to the ALJ or the Appeals Council casts doubt on its veracity. See Fair, 885 F.2d at 603 ("While there are any number of good reasons for [failing to seek medical treatment], a claimant's failure to assert one . . . can cast doubt on the sincerity of the claimant's testimony") (citations omitted).

Fourth, the ALJ's finding that, despite his "allegedly disabling symptoms," plaintiff "does not take any medications" [AR at 17], is supported by substantial evidence. Although plaintiff testified that he experiences disabling pain and back spasms, plaintiff admitted that he takes no medications to treat his symptoms. [See AR at 36-37, 41.] Plaintiff explained his lack of pain medication as owing to a fear of becoming addicted, but also admitted that when he previously did take pain medication as prescribed, he did not become addicted. [AR at 41.] That plaintiff denied any more recent use of pain medication, despite ongoing symptoms, supports the ALJ's finding that plaintiff's allegations of disabling symptoms were less than fully credible. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (finding that plaintiff failed to take medication for seven years despite allegations of disabling back pain supported the ALJ's rejection of plaintiff's subjective allegations of pain and disabling limitations).

Finally, the ALJ properly found that the credibility of plaintiff's allegations "regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." [AR at 17.] The absence of objective medical evidence to support a plaintiff's subjective complaints is a factor that an ALJ can consider in

14

evaluating symptom testimony. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that while medical evidence alone cannot discredit testimony as to pain, it is one factor that the ALJ is permitted to consider). The ALJ noted that plaintiff "received routine treatment for complaints of back pain since his surgery," and that the "lack of more aggressive and consistent treatment or even a referral to a specialist suggests [plaintiff]'s symptoms and limitations were not as severe as he alleged." [AR at 17.] The ALJ also found that the opinions of the orthopedic consultative examiner and the State agency physical medical consultants on initial review and on reconsideration "are generally consistent in that they all assess [plaintiff] is able to perform a range of work at the medium exertional level."[7] [AR at 18; see also AR at 233-37, 240-46, 281-88.] Moreover, while records reveal the presence of a medical impairment that could cause low back pain, the Court notes that the record does not contain any physician opinion that sets out limitations greater than those in the RFC assessed by the ALJ. [See, e.g., 306-08]; see Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (the ALJ properly discounted the claimant's allegations where no doctor "expressed the opinion that [the claimant] was totally disabled" or implied that he "was precluded from all work activity") (emphasis in original).

In sum, because the ALJ provided clear and convincing reasons to discount plaintiff's subjective allegations, her credibility determination must be upheld. See Green, 803 F.2d at 532. Remand is not warranted on this issue.

/
/
/

---

[7] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

**C.  LAY WITNESS TESTIMONY**

Plaintiff argues that the ALJ erred by rejecting the testimony of his mother, Georgia Hunt, regarding plaintiff's functional limitations. [JS at 3-7, 10-16, 21-23.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill, 12 F.3d at 919 ("[a]n eyewitness can often tell whether someone is suffering or merely malingering ... this is particularly true of witnesses who view the claimant on a daily basis."). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

At the administrative hearing, plaintiff's mother opined that plaintiff would not be able to adhere to a normal work schedule of eight hours each day, five days a week, because of his back spasms, which make it so that "[h]e can't sit for long periods," and "has to either sit down or lay down." [AR at 52.] She further testified that plaintiff "has a problem concentrating on jobs," as well as a "problem with time" and lateness. [AR at 50-51.]

In her decision, the ALJ rejected plaintiff's mother's testimony finding that "[w]hile a layperson can offer an opinion on a diagnosis, the severity of the claimant's symptoms, or the side effects of medications in relationship to the claimant's ability to work, the opinion of a layperson is far less persuasive on those issues than are the opinions of medical professionals as relied on herein." [AR at 16.] Additionally, the ALJ found that "the opinion of [plaintiff]'s mother is not an unbiased one because she has a familial motivation to support [plaintiff]." [Id.] Finally, the ALJ

found that, "[m]ost importantly, [Ms. Hunt's] statements are not supported by the clinical or diagnostic medical evidence that is discussed elsewhere in this decision." [Id.]

The ALJ's finding that Ms. Hunt's testimony was unsupported by the clinical or diagnostic medical evidence constitutes a germane reason supported by substantial evidence for rejecting her testimony. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citation omitted); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (same); see also Bayliss, 427 F.3d at 1218 ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses."). Here, while Ms. Hunt opined that plaintiff would not be able to perform in a job with a normal work schedule of eight hours each day, five days a week, because of his back spasms, the examining and State agency physicians consistently assessed that plaintiff "is able to perform a range of work at the medium exertional level." [See AR at 18, 52, 233-37, 240-46.]

Moreover, while it may have been improper for the ALJ to discount Ms. Hunt's allegations on the grounds that she is biased because she is a family member and may stand to benefit financially should plaintiff be found disabled (see Smolen, 80 F.3d at 1289; Regennitter, 166 F.3d at 1298; Johnson v. Astrue, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) ("the Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship")), because the ALJ provided at least one valid reason germane to Ms. Hunt for discrediting her testimony, any error was harmless. See Stout, 454 F.3d at 1054-55 (finding harmless error where the ALJ "provided numerous other record-supported reasons for discrediting the claimant's testimony," such that "the ALJ's error did not materially impact his decision"); Burch, 400 F.3d 676 (holding that an ALJ's decision will not be reversed for errors that are harmless).

In short, the ALJ's rejection of plaintiff's mother's testimony is supported by substantial evidence and remand is not warranted on this claim.

/
/
/
/

## VI.

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; (2) the decision of the Commissioner is **affirmed**; and (3) the Clerk of the Court shall serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 13, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE